UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

ROBIN AVEY )
)
V. ) NO. 2:10-CV-267
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security )

## REPORT AND RECOMMENDATION

The matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation, following the denial of plaintiff's applications for Disability Insurance Benefits and Supplemental Security Income after hearings before and Administrative Law Judge ["ALJ"]. Both the plaintiff and the defendant Commissioner have filed dispositive Motions [Docs. 9 and 16].

The sole function of this Court in making this review is to determine whether the findings of the Secretary are supported by substantial evidence in the record. *McCormick v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Secretary's decision must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human*

*Services*, 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

The plaintiff was 42 years old on her alleged disability onset date of November 15, 2004. She has a limited education. The ALJ determined that she cannot return to her past relevant work. Plaintiff had previously received benefits, but they were terminated in March of 2004 when it was found that her condition had improved.

The plaintiff's medical history, which is based solely on her asserted mental impairments, is summarized by the Commissioner's brief as follows:

> In September 2005, Avey was diagnosed with bipolar disorder and alcohol abuse by Samaritan Behavioral Health (Tr. 156). Avey was assessed a Global Assessment of Functioning ("GAF") score of 50 (the upper limit of scores indicating "Serious symptoms . . . . OR any serious impairment in social, occupational, or school functioning") and prescribed medication (Tr. 156). Avey reported weekly alcohol use and recent use of crystal meth (after several years of not using that drug), as well as daily hallucinations (Tr. 161) and other psychological symptoms (Tr. 164).
> One month later, Avey was diagnosed with bipolar disorder and alcohol and polysubstance abuse in early remission, and assessed a GAF score of 41 (Tr. 254). That same month, social worker Kate Scarpero began seeing Avey (Tr. 212). Thirteen days later, Ms. Scarpero opined that Avey was unable to work, had no motivation/energy, and was constantly depressed (Tr. 211). Ms. Scarpero also wrote that Avey was also unable or did not cook, perform household chores, shop, or engage in hobbies (Tr. 212). She further indicated that Avey stated that she had a high need for rests, had poor attendance, lacked awareness of hazards, and had poor stress tolerance (Tr. 211). Ms. Scarpero also wrote that Avey lived with her boyfriend and visited with her family four times a week, but had no friends (Tr. 211).
> In November 2005, Dr. Patricia Semmelman reviewed Avey's medical records for the state agency (Tr. 176-189). She opined that while Avey had severe impairments, she did not expect those severe impairments to last more than 12 months (Tr. 176, 188). Dr. Semmelman noted that Avey was receiving treatment at the time of her assessment, but had previously been able to work even without such treatment (Tr. 188). Dr. Semmelman further wrote that remaining sober would be beneficial to Avey's improvement (Tr. 188).

2

In March 2006, Dr. Jerry E. Flexman performed a consultative exam for the state agency (Tr. 190-193). He diagnosed Avey with bipolar disorder, polysubstance abuse (in remission), alcohol abuse (in "reported remission"), and borderline personality traits (Tr. 192). He assessed her current GAF score to be 50 (Tr. 192). He also assessed Avey as having slight impairments in sustaining attention and understanding, and in remembering, carrying out short, simple instructions; moderate difficulties (i.e. "moderate limitations . . . . but the individual is still able to function satisfactorily") in making judgements for simple work related decisions, interacting with coworkers and supervisors, and responding appropriately to work pressures; and marked restrictions (i.e. ". . . . the ability to functioning is severely limited, but not precluded") in interacting with the public (Tr. 193).

Avey stated that she stopped using marijuana in August 2005 and quit alcohol in September 2005 (Tr. 191). However, Dr. Flexman noted that Avey's breath smelled of alcohol(Tr. 191). Avey further reported that she sometimes drove, went shopping once a month, and enjoyed eating out (Tr. 191). She also prepared food throughout the day, and did cleaning, sweeping, and general straightening up around the house, but did not do outdoor chores (Tr. 191). She denied hobbies, volunteer activities, or spending time with friends, although she did visit with her parents and siblings (Tr. 191).

Dr. Flexman performed a mental status exam which showed that Avey was unmotivated, had fair eye contact (40% of the time), negative affect with no lability, and unvaried/blunted attitude (Tr. 191). He assessed Avey's attention span as poor (with fair effort), recent and remote memory as fair (with minimal effort), and judgement as fair (Tr. 191-92). He also assessed Avey's simple reasoning and concentration as good (with good effort) and intellectual functioning as average (Tr. 192). Dr. Flexman noted that Avey was unable to acknowledge the presence of psychological issues in her life, but had a realistic degree of recognition of the impact that her impairment had on her ability to function (Tr. 192). Dr. Flexman also noted appropriate speech, pleasant tone of voice, 100-percent intelligible expressive language with no semantic or syntax errors, and had thought process and flow within normal limits (Tr. 191-92). He also wrote that Avey was able to understand instructions, and had a good energy level (Tr. 191).

Three months later, in June 2006, Dr. Todd Finnerty reviewed Avey's medical records for the state agency (Tr. 194-209). Dr. Finnerty assessed Avey as having moderate limitations in the general areas of activities of daily living, social functioning, and maintaining concentration, persistence, or pace (Tr. 206). More specifically, Dr. Finnerty wrote that Avey was moderately limited in eleven areas of work functioning and markedly limited in three areas of work functioning (Tr. 194-95). But Dr. Finnerty indicated that Avey was not significantly limited in her ability to make simple work-related decisions, ask simple questions, or understand and carry out very short and simple instructions (Tr. 194-95).

In the meantime, Avey continued with therapy, reporting psychological issues, including some manic symptoms (Tr. 224, 230, 232). In June 2006, it was noted that Avey continued to struggle with mood swings and that her spending had

3

somewhat leveled out (Tr. 222). Additionally, Avey was using gardening to cope with anger, and was working on communication skills with her boyfriend (Tr. 222). She also had one relapse with alcohol (Tr. 222). One month later, Avey was diagnosed as having bipolar I mixed and polysubstance dependency and assessed a GAF score of 50 (Tr. 218). It was also noted that Avey reported two relapses since starting her treatment program (Tr. 218).

In November 2006, Dr. E. C. Longo III, a psychiatrist, wrote a letter regarding Avey's disability claim, where he opined that Avey was unable to secure gainful employment because of her mental impairments (Tr. 423). He wrote that when he saw Avey three months prior to his letter, she was having significant paranoid ideations, although she had some improvements in her mood and neurovegatative symptoms (Tr. 423).

In January 2007, Avey continued to have mood swings, but was using her coping skills more consistently (Tr. 272). Avey continued with therapy, sometimes showing an increase in symptoms (*see e.g.* Tr. 271, 275, 282).

In August 2008, at Avey's first hearing, medical expert Dr. Kathleen O'Brien opined that when Avey was not abusing substances, she was able to perform simple, unskilled work (but would do better without high demands in terms of time or production constraints) (Tr. 456). She believed that Avey's bipolar disorder responded to medication at times, but that Avey had ongoing problems with substance abuse that prevented her from achieving greater benefits (Tr. 469). Dr. O'Brien also noted that when Dr. Flexman wrote that Avey's alcohol was in "reported remission," he was implying that he did not believe Avey's claims of remission in light of the smell of alcohol on Avey's breath (Tr. 466).

Avey testified that she had poor concentration because of racing thoughts, cried easily, would sleep excessively, was bad with money, and had difficulty getting the energy to shower (but showered maybe twice a week) (Tr. 476-77). She also maintained that she had not had a single drink since the summer of 2005 and had not used drugs since she was in her 20s (Tr. 477-78).

In October 2008, psychotherapist Michael Wilson indicated that he had been working with Avey since March 2007 (Tr. 349). He opined that employment was not a viable option for Avey because of low frustration tolerance and poor coping skills (Tr. 349). Mr. Wilson stated that he thought that Avey was open and honest, was doing quite well with her substance abuse, but only had made a modicum of progress regarding her bipolar disorder (Tr. 349). Mr. Wilson further wrote that (to his knowledge) Avey only drank alcohol once in the prior 18 months (Tr. 349). One month later, Mr. Wilson noted that Avey was making some progress and was open and very expressive, venting at length about her move to Tennessee (Tr. 357). That same day, Avey told a counselor that she was moving to Tennessee to take care of her father, but was not happy about doing so (Tr. 354). The counselor observed that Avey was depressed/irritable and hopeless, with a blunted affect, psychomotor retardation, and easily distracted (ruminating about her move), but was also logical (Tr. 354).

In January 2009, Avey had a GAF of 47, but Mr. Wilson noted that Avey was

4

sufficiently motivated, insightful, and had above-average intelligence (Tr. 350-51). Avey then moved to Tennessee and began working with new therapists. In April 2009, psychotherapist Marbeth Dougherty noted that Avey presented with an anxious mood and congruent affect that later dissolved into a more relaxed and centered mood (Tr. 395). One month later, Dr. Kenneth K. Greenwood thought that instead of bipolar disorder, Avey might be better classified as having ADHD and prescribed medication for that condition (Tr. 391). He noted that Avey had a nervous and frustrated mood and that her affect was initially very jittery, but that she eventually became somewhat calm (Tr. 391). Dr. Greenwood also noted that Avey had average eye contact, speech, and motor behavior, with no hallucinations (Tr. 391).

In July 2009, Christy Trett, case manager for Dr. Greenwood, wrote that Dr. Greenwood agreed with two forms that she was sending to Avey's attorney (Tr. 397). Those forms indicated that Avey had bipolar disorder, polysubstance abuse (in remission), ADHD, and a current GAF score of 30 (Tr. 398). Those forms also stated that Avey could not work due to her symptoms and had to move in with her parents (Tr. 398). Avey was also assessed with marked limitations in activities of daily living, interpersonal functioning, concentration, and adaptation to change (Tr. 400). One month later, Ms. Trett indicated that Avey had taken her medications consistently since beginning treatment with Dr. Greenwood, except when for one period while she was waiting for approval for a medication assistance program (Tr. 422).

Avey continued to receive therapy and exhibited some psychological symptoms, with Ms. Dougherty noting in September 2009 that Avey presented with a depressed mood and sad and tearful affect (Tr. 432). But Ms. Dougherty also wrote that Avey participated fully in her treatment and reported being able to complete crossword puzzles, decreasing obsessive eating, feeling more aware of and introspective regarding her mood swings (Tr. 432). A few days later, Dr. Greenwood wrote that Avey did get mood swings with irritability or depression, but that those symptoms were not very severe (Tr. 430). He also noted that Avey got tearful easily, but that her mental status exam was normal except for her having an irritable mood (Tr. 430). In the next month, Avey had increased depression and frustration, with therapists noting increased stress with the visit of her sister and brother-in-law (Tr. 424-27).

Judge Peter Z. Behuniak (the "ALJ") (the ALJ who authored the decision being reviewed by the Court), presided over Avey's third hearing. At that hearing, Avey testified that she had no friends and only left her house to drive to doctor's appointments, spending the rest of the time in her room (Tr. 503-04). She stated that she had panic attacks, difficulty focusing and being around others, and could not get out of bed some days (Tr. 506-07). Avey further testified that the last time that she was intoxicated by alcohol was the summer of 2005, around the time that she was fired from her last job (Tr. 508).

Also at that hearing, medical expert Dr. Schacht testified that the record

5

showed "significant conflicts" that he could not resolve, such as severe subjective complaints and relatively normal mental status exams (Tr. 510). He also noted that Avey's drug and alcohol history was reported inconsistently and that Avey refused to attend alcohol and drug groups (Tr. 510). Because Avey had never been hospitalized, there had never been an opportunity to observe her in an environment where she was prevented from having access to substances (Tr. 510-11). Dr. Schacht also noted that Avey had not had a manic episode since she had stopped using stimulants, which called her diagnosis of bipolar disorder into question (Tr. 511-12). Assuming that Avey had a depressive syndrome, she would be limited to jobs that were simple and low stress (Tr. 512). Dr. Schacht further recommended that Avey not work in environments that would expose her to alcohol or drugs or at jobs that required shift work (to account for Avey's mood disorder) (Tr. 512-13).

[Doc. 17, pgs. 3-10]

At the first administrative hearing held on August 12, 2009, the ALJ took the testimony of a medical expert who testified that the plaintiff had no severe physical impairments. (Tr. 492-95). At the second hearing, in addition to the testimony of Dr. Thomas E. Schacht summarized above, the ALJ also took the testimony of Dr. Robert Spangler, a vocational expert ["VE"]. The ALJ asked Dr. Spangler to assume a person "with a ninth grade education, who has limitations for only simple, no stress jobs with no ability to work shift work and no ability to work in a safety-sensitive environment, and no ability to work in a situation where there's ready access to drugs, for example, a bar or a nursing home." Also, the person could work at sedentary, light or medium exertional levels. When asked if there were jobs, Dr. Spangler stated that there were 1,660,000 jobs in the national economy. (Tr. 515-16).

In his hearing decision, the ALJ found "the plaintiff has been diagnosed as having a severe bipolar disorder." This was her sole severe impairment. (Tr. 17). He found that she had mild restrictions in her activities of daily living. This was based upon her description of her daily activities and the fact she moved to this State in order to care for her elderly

6

father who suffers from dementia. As to social functioning, he found she had moderate difficulties, based upon Dr. Flexman's opinion that she got along poorly with others and some of plaintiff's complaints regarding her inability to interact with people. Regarding concentration, persistence or pace, he found she had moderate difficulties, for which Dr. Schacht opined her work activities should be limited to simple and low stress jobs. (Tr. 18). The ALJ found that she had experienced one or two episodes of decompensation, noting that plaintiff had never been psychiatrically hospitalized and that "<u>she refused</u> treatment when drug and alcohol rehabilitation was recommended." (Emphasis in original). (Tr. 19).

With respect to residual functional capacity ["RFC"], the ALJ found that she "has the residual functional capacity to perform a full range of work at all exertional levels, but with the following mild nonexertional limitations. Due to an alleged bipolar disorder, the claimant is limited to simple and low stress jobs. Due to drug and alcohol abuse, she is precluded from working any place where drugs or alcohol might be readily available, such as nursing homes or bars. Finally, due to her mood disorder, the claimant is precluded from any jobs which would require shift work." (Tr. 19). The use of the word "mild" was misleading, and confused this Court when reading his opinion. His findings of moderate limitations in the areas described above which he found limited her to simple, low stress jobs and not being able to do shift work certainly show the existence of a severe impairment, but a second and third reading was required to ascertain that her RFC was based upon a finding of severe, "non-mild" impairment in certain areas. If she were only had "mild" limitations, then in *most* adjudications, she would not have a severe impairment. What the ALJ was doing was blaming certain aspects of her impairment on drug and alcohol abuse, which of course is not

7

a basis for recovery of Social Security benefits. However, the use of the word "mild" notwithstanding, he was considering her to have a severe mental impairment based upon her diagnosis of bipolar disorder in its own right, and framing the RFC accordingly. He based the particular restrictions in large part on the testimony of Dr. Schacht. (Tr. 19).

He detailed the plaintiff's subjective symptomology (Tr. 20), and then discussed the testimony of Dr. Schacht in detail relating how the affects of her mental problems apart from her drug and alcohol abuse would restrict her from certain types of work. However, because of her history of drug and alcohol abuse, Dr. Schacht, and the ALJ, also restricted her from working in places where drugs or alcohol might be readily available. (Tr. 21).

The ALJ noted that Dr. Flexman in March, 2006, saw the plaintiff for a consultative examination and noted she smelled of alcohol even though she asserted that she quit drinking in September 2005. He noted her activities of daily living. He stated that her treatment records indicated "significant control over the claimant's symptoms was able to be achieved with medication." He noted the brief period of involvement of plaintiff with Social Worker Scarpero and assumed the activities of daily living form completed by Scarpero were based entirely on what the plaintiff told her and not from observations during the 13 day period of their relationship. (Tr. 22).

The ALJ discussed the opinion of Michael Wilson, a psychotherapist who wrote a letter dated October 21, 2008, stating that the plaintiff "was doing quite well with substance use." Mr. Wilson's letter also said "to the best of my knowledge she has consumed alcohol once in the past year and a half and no illegal substances." Wilson opined that "employment was not a viable option." He noted that Wilson's treatment notes showed plaintiff "was

8

coping well with current stressors and making some progress." Mr. Wilson's records also stated the plaintiff had above average intelligence and was insightful. (Tr. 23).

The ALJ next discussed the records of Dr. Greenwood, which showed the plaintiff was apparently responding well to treatment and benefitting from her medications. Dr. Greenwood stated that plaintiff reported "mood swings at times with irritability or depression, but that it was not very severe." (Tr. 24).

The ALJ then stated regarding the plaintiff's credibility that "I cannot believe the claimant regarding her alleged limitations from bipolar disorder, in light of her long history of poly substance abuse, with nothing other than her claim that she has ceased using and abusing..., and all of her alleged symptoms can be equally due to drug and alcohol abuse or bipolar disorder." He then stated that "Dr. Schacht opined that if she were truly no longer abusing substances, she would have very few limitations." (Tr. 24). Once again, as with the RFC, this is a somewhat strained way of saying that he was still giving the plaintiff the benefit of the doubt on bipolar symptoms and that those were the basis for the RFC restrictions.

The ALJ gave little weight to Dr. Longo's opinion. He based this upon the doctor's apparent heavy reliance upon plaintiff's subjective complaints which he "seemed to uncritically accept as true..." Also, the ALJ stated that "as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints." The ALJ then explained what is left unsaid in the vast majority of hearing decisions, which were the possible motives for doctors expressing questionable opinions. The ALJ suggested the possibility of doctors giving an "opinion in an effort to assist a patient

9

with whom he or she sympathizes..." and that some "patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patient's requests..." The ALJ concluded these thoughts by stating "while it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, considered as a whole, as in the current case." (Tr. 24).

He gave great weight to the opinion of Dr. Flexman, and stated that "Dr. Flexman's opinion is consistent with the limitations determined in this decision which indicate that the claimant's work environment ought to be simple and low stress jobs." He gave little weight to Mr. Wilson because that opinion showed the therapist "was [evidently] not aware of the claimant's inconsistencies concerning her drug and alcohol abuse" and "had no idea whether she was abusing substances when she was employed after her onset date." He found Wilson' opinion that "employment was not an option," to wit: that she was disabled, was an issue reserved to the Commissioner." (Tr. 25).

He gave great weight to the opinion of Ms. Dougherty. He opined that Ms. Scarpero's opinion was entitled to little weight because of her very short treatment relationship with the plaintiff and the fact that her opinion appeared to be a mere regurgitation of the plaintiff's subjective complaints. (Tr. 25).

He found the State Agency psychologist's opinion entitled to great weight to the effect that "with abstinence from drugs and alcohol, the claimant's impairments would not be severe." The ALJ found "that the record as a whole is totally consistent with these opinions." Finally, he gave Dr. Schacht's testimony great weight because of his qualifications and

10

because he "thoroughly reviewed all the medical evidence and was present at the hearing to observe the demeanor of the claimant and to listen to her testimony." (Tr. 25).

Based upon the jobs identified by the VE for a person with the RFC the ALJ found plaintiff to possess, he found that a significant number of jobs existed which she could perform. Accordingly, he found that she was not disabled. (Tr. 26-27).

Plaintiff argues first that Drs. Longo and Greenwood were not given the appropriate weight accorded to treating physicians under the applicable regulations. It is of course true that treating physicians are to be given great weight and even controlling weight if there opinions are consistent with the evidence in the record and are not reasonably contradicted. Regarding the letter of Dr. Longo addressed to the plaintiff herself, he stated "I believed your psychotic symptoms and emotional lability precluded you from seeking and securing gainful employment..." (Tr. 423). Besides being contrary to the opinions of the State Agency psychologists and Dr. Schacht, as well as the ALJ's findings regarding the plaintiff's credibility, this is in essence a statement by Dr. Longo that the plaintiff is disabled, the issue reserved to the Commissioner. It is true in the Sixth Circuit that the opinion of a state agency physician or psychologist and a medical expert who has reviewed the entire record and observed a claimant at the hearing can provide substantial evidence in the face of contrary testimony from a treating acceptable medical source. *See, Combs v. Commissioner of Soc. Sec.,* 459 F.3d 640 (6th Cir. 2006), and *Cutlip v. Secretary of H.H.S.*, 25 F.3d 284 (6th Cir. 1994). Here, the ALJ noted the very factors mentioned in those cases, such as familiarity with entire record, and in the case of Dr. Schacht, observation of the plaintiff at the hearing. Their opinions constitute substantial evidence and the ALJ adequately explained the reason

11

for giving greater weight to them than to the opinion letter of Dr. Longo. Also, *Sherrill v. Secy. of H.H.S.*, 757 F.2d 803 (6th Cir. 1985) is distinguishable from this case. In that case, the medical expert testifying at the hearing was "ambivalent" in his testimony, but much more importantly, was an internal medicine specialist testifying contrary to treating psychiatrists. Dr. Schacht is a properly qualified clinical psychologist.

While this same rationale would apply to Dr. Greenwood's opinion, in fact the ALJ gave great weight to his opinion regarding the plaintiff's progress and stability when she took her medications and was compliant with treatment. (Tr. 25).

Plaintiff next asserts that the ALJ erred in not properly evaluating and giving weight to the opinions of the therapists Scarpero, Wilson and Ms. Christy Trett. Even though they were not "acceptable medical sources" entitled to controlling weight, the regulations nevertheless state that such opinions can be important and should be evaluated. Plaintiff asserts this was even more of a necessity in this case because she asserts their opinions and records show she was not abusing drugs and alcohol. The ALJ carefully evaluated Scarpero and Wilson's opinions and stated valid reasons for the weight given. Wilson was unaware of the extent or duration of plaintiff's alcohol use and Scarpero had a treatment relationship of only 13 days. The ALJ did not err in attaching little weight to their opinions. As for Ms. Trett's forms, these were approved by Dr. Greenwood and the ALJ did consider carefully the findings of Dr. Greenwood and even utilized some of them.

Plaintiff also asserts that the ALJ did not follow 20 C.F.R. § 404.1535 in evaluating whether she would be disabled apart from her drug and alcohol problems. As pointed out by the Commissioner, the ALJ considered exactly that and relied upon the opinion of Dr.

Semmelman (Tr. 188) and specifically found that "the record as a whole is totally consistent with these opinions." (Tr. 25). There was substantial evidence that if she had never had a problem with drugs and alcohol she would not even have a severe impairment. Here, the ALJ did place substantial restrictions on her capabilities based upon Dr. Schacht's testimony and other evidence in the record. He gave plaintiff the benefit of the doubt that her bipolar disorder did cause severe problems separate from her issues with substance abuse. It is difficult, but certainly not impossible for a Social Security claimant to overcome the shadow of problems with alcohol and/or drug abuse, if the individual remains "clean." Here however, the plaintiff had relapses and made statements which simply were not true regarding their occurrence. The ALJ properly evaluated her intertwined problems of substance abuse and bipolar disorder.

Plaintiff also asserts that the ALJ erred in not including the moderate and marked findings described at Tr. 193 and 195 in his hypothetical question to the VE, citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010). However, what the Commissioner lacked in *O'Connor-Spinner* was a "logical bridge" between the ALJ's findings of moderate limitations and the restrictions to simple, repetitive work in the hypothetical to the VE. In the present case, the testimony of Dr. Schacht discussed hereinabove was the foundation for each of the ALJ's restrictions in the hypothetical. Dr. Schacht was of the opinion that her degrees of limitation translated into, and were accommodated by, the restrictions to simple, low stress jobs and preclusion from any jobs which would require shift work. There was ample substantial evidence to support the hypothetical question.

There was substantial evidence to support the ALJ's finding of RFC, and his question

13

to the VE. He adequately explained the weight given to all of the experts. His determination on credibility was within his prerogative as finder of fact and had evidence of untrue statements and daily activities to support it. For these reasons, it is respectfully recommended that the plaintiff's Motion for Judgment on the Pleadings [Doc. 9] be DENIED, and the defendant Commissioner's Motion for Summary Judgment [Doc. 16] be GRANTED. [1]

Respectfully submitted:

s/ Dennis H. Inman
United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).

14

Case 2:10-cv-00267-JRG-DHI  Document 18  Filed 12/27/11  Page 14 of 14  PageID #: 86